UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- :
Steven Banberger and Phyllis Banberger,    :     Case Number.: 2:11-CV-02679
    :
    Plaintiffs    :
    :
    :
    :
    v.    :     **FIRST AMENDED**
    :     **COMPLAINT & DEMAND**
ZIMMER, INC.; ZIMMER HOLDINGS, INC.;    :     **FOR JURY TRIAL**
ZIMMER ORTHOPAEDIC SURGICAL    :
PRODUCTS, INC.    :
    Defendants.    :
--------------------------------------------------------- :

COMES NOW the Plaintiffs, Steven Banberger and Phyllis Banberger, by and through their

undersigned Counsel, and for their Complaint against the Defendants, allege as follows:

**NATURE OF THE CASE**

1.    This is an action for damages suffered by Steven Banberger, as a direct and

proximate result of Defendants' wrongful conduct in connection with the development, design,

manufacture, distribution, and selling of Defendants' knee replacement product, the Zimmer

NexGen Legacy Posterior Stabilized High-Flex knee replacement with an LPS-Flex Femoral

Component (hereinafter "Zimmer NexGen LPS Flex") or "the Product".

2.    Defendants knew or should have known that the Zimmer NexGen LPS Flex can

loosen in patients, such as Plaintiff Steven Banberger, causing personal injury, significant pain,

and loss of movement, and that this injury can only be remedied through subsequent revision

surgery and/or knee replacement. Further, Defendants misled health care professionals and the

public into believing that the Zimmer NexGen LPS Flex was safe and effective for use in knee

replacement surgery; engaged in deceptive, misleading and unconscionable promotional or sales

methods to convince health care professionals to utilize the Zimmer NexGen LPS Flex, even

though Defendants knew or should have known that the Zimmer NexGen LPS Flex was unreasonably unsafe; and failed to warn health care professionals and the public about the safety risks of the Zimmer NexGen LPS Flex.

## PARTIES

3.     Plaintiff Steven Banberger is a citizen of the State of New York, and a resident of Lindenhurst, NY.

4.     Defendant, Zimmer, Inc. is a corporation organized and existing under the laws of Delaware and has its principal place of business located in Warsaw, Indiana.

5.     Defendant Zimmer Holdings, Inc. is a corporation organized and existing under the laws of Delaware, and has its principal place of business located in Warsaw, Indiana.

6.     Defendant Zimmer Orthopaedic Surgical Products, Inc. is a corporation organized and existing under the laws of Ohio, and has its principal place of business in Dover, Ohio.

7.     At all times material hereto, Defendants developed, designed, tested, manufactured, distributed, marketed, and sold the Zimmer NexGen LPS Flex. Defendants' products, including the Zimmer NexGen LPS Flex, are sold throughout the world, including within the state of New York.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.     Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiff's

claims occurred in this district. At all times material hereto, Defendants conducted substantial business in this district.

## FACTUAL BACKGROUND

## KNEE REPLACEMENT BACKGROUND

10. Total knee arthroplasty (TKA), also called total knee replacement, is a common medical procedure performed. The surgery is designed to help relieve pain and improve joint function in people with severe knee degeneration due to arthritis or trauma.

11. Upon information and belief, the TKA procedure is done by separating the muscles and ligaments around the knee to expose the inside of the joint. The ends of the thigh bone (femur) and the shin bone (tibia) are removed as is often the underside of the kneecap (patella).

12. Upon information and belief, about 85 to 90 percent of total knee replacements are successful up to ten years.

13. Mechanical loosening means that for some reason (other than infection) the attachment between the artificial knee and the bone has become loose.

14. Loosening can occur with any component of the artificial knee: the femoral, the tibial or the patellar component.

15. Upon information and belief, loosening of an artificial knee can be diagnosed using X-ray. In X-ray radiographs of a loose knee joint there are one or more radiolucent lines around the contours of the artificial knee joint.

16. A loose artificial knee is a problem because it causes pain and wearing away of the bone. A painful loose knee can restrict the patient's daily activities severely. A loose artificial knee also involves severe psychical burden for the patient.

17. Once the pain becomes unbearable or the individual loses function of the knee, another operation will probably be required to revise the knee replacement. A loose, painful artificial knee can usually, but not always, be replaced.

18. The purpose of knee revision surgery is to remove a failed knee implant and replace it with a new one.

19. Upon information and belief, in a revision operation of a total knee failed by loosening the biggest problem is usually to reconstruct the severe bone loss caused by bone destruction around the failed total knee prosthesis, and restore the stability in the revised total knee.

20. Upon information and belief, the results of a revision operation are not as good as the first, and the risks of complications are higher. The range of motion in the knee after the revision surgery may be smaller and the walking capacity may be also diminished. The rate of loosening is higher after revision surgery than in primary knee replacement surgery.

## ZIMMER NEXGEN LPS FLEX FACTS

21. Zimmer was founded in 1927, and purports to be a worldwide leader in the design and manufacture of orthopaedic reconstructive, spinal and trauma devices, dental implants, and related orthopaedic surgical products.

22. The Zimmer NexGen LPS Flex uses a "high-flex" femoral component that purports to allow a greater degree of flexion than the standard femoral component.

23. The Defendants generally, manufactured, labeled, packaged, distributed, supplied, marketed, advertised, and/or otherwise engaged in all activities that are part and parcel of the sale and distribution of an artificial knee, and by said activities, caused the Zimmer NexGen LPS Flex to be placed into the stream of commerce throughout the United States.

24.     Defendants made, participated in and/or contributed to filings with the FDA in conjunction with the approval process for the Zimmer NexGen LPS Flex.

25.     Upon information and belief, Defendants were in control of the design, assembly, manufacture, marketing, distribution, packaging, labeling, processing, supplying, promotion, sales, and the issuance of product warnings and related information with respect to the Zimmer NexGen LPS Flex.

26.     Defendants were at all times material hereto subject to the laws of the United States of America, including provisions relating to the FDA, and the rules and regulations thereof, in conjunction with the approval process, labeling, and other after-market activities that pertain to the Zimmer NexGen LPS Flex.

27.     The Zimmer NexGen LPS Flex has been widely advertised, marketed and represented by the Defendants as a safe and effective treatment.

## ZIMMER NEXGEN LPS FLEX PROBLEMS

28.     In 2007, The Journal of Bone and Joint Surgery (British Edition) published a peer reviewed study by professors at the Seoul National University College of Medicine titled, *High Incidence of Loosening of the Femoral Component in the Legacy Posterior Stabilised-Flex Total Knee Replacement*. The study showed that 38% of the implanted LPS high flex knees were loose shortly after 2 years post implant. From the group of patients with loose knees, over half (56%) had their knee revised due to pain.

29.     From the time that Defendants first began selling the Zimmer NexGen LPS Flex in the United States, the product labeling and product information for the Zimmer NexGen LPS Flex failed to contain adequate information, instructions, and warnings concerning implantation of the product and the increased risks that the Zimmer NexGen LPS Flex can loosen in patients.

30. Despite its knowledge of the serious injuries associated with use of the Zimmer NexGen LPS Flex, Defendants engaged in a marketing and advertising program which as a whole, by affirmative and material misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of the Zimmer NexGen LPS Flex was safe.

31. Upon information and belief, Defendants downplayed and understated the health hazards and risks associated with the use of the Zimmer NexGen LPS Flex and through promotional literature as well as sales visits to orthopaedic surgeons, deceived doctors and potential users of the Zimmer NexGen LPS Flex by relaying positive information, while concealing the nature and extent of known adverse and serious health effects.

## FACTUAL ALLEGATIONS

32. On November 18, 2008 plaintiff's physician implanted a Zimmer NexGen LPS Flex system including a NexGen LPS High Flex femoral component.

33. Prior to November 18, 2008, the treating physician for Plaintiff, as well as Plaintiff, were exposed to the aforementioned advertising and marketing campaign directly by the Defendants.

34. Plaintiff Steven Banberger and plaintiff's physician, either through direct promotional contact with Sales Representative Defendants, through word-of-mouth from other health care providers, and/or through promotional materials, received the information the Defendants intended that they receive, to-wit: that the Zimmer NexGen LPS Flex was safe and effective for use in TKA procedures.

35. Plaintiff returned to plaintiff's physician several times due to consistent pain relating to her Zimmer NexGen LPS Flex and was subsequently advised that her Zimmer NexGen LPS Flex was experiencing "loosening" and would need to be revised.

36. On February 24, 2011, Plaintiff had a second surgery to revise/replace her previously implanted Zimmer NexGen LPS Flex. Plaintiff's tibial component was replaced.

37. As a direct and proximate result of the use of the Zimmer NexGen LPS Flex, Plaintiff suffered, and continues to suffer, serious bodily injury and harm.

38. As a direct and proximate result of the use of the Zimmer NexGen LPS Flex, Plaintiff incurred, and continues to incur, medical expenses to treat her injuries and condition.

39. At no time material to her use of the Zimmer NexGen LPS Flex was Plaintiff or her physicians told, warned, or given information about the higher risks of loosening in the Zimmer NexGen LPS Flex.

## EQUITABLE TOLLING APPLICATICABLE STATUES OF LIMITATIONS

40. The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and plaintiff's operating physician the true risks associated with utilizing the Zimmer NexGen LPS Flex.

41. As a result of Defendants' actions, Plaintiff and plaintiff's physician were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

42. Furthermore, the defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the true character, quality and nature of

the Zimmer NexGen LPS Flex. The defendants were under a duty to disclose the true character, quality and nature of the Zimmer NexGen LPS Flex because this was non-public information over which the defendants had and continue to have exclusive control, and because the defendants knew that this information was not available to the Plaintiff, medical providers and/or to their facilities. In addition, the defendants are estopped from relying on any statute of limitations because of their intentional concealment of these facts.

43.    The Plaintiff had no knowledge that the defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the defendants, the Plaintiff could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. The defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable medical device, notwithstanding the known or reasonably known risks. Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on only the defendants' representations.

## COUNT I

## STRICT LIABILITY

44.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

45.    At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sales of the Zimmer NexGen LPS Flex. Defendants designed, manufactured, marketed, and sold the Zimmer NexGen LPS Flex to medical professionals and their patients, knowing it would be implanted for knee replacements.

8

46.     The Zimmer NexGen LPS Flex as designed, manufactured, marketed and sold by Defendants reached Plaintiff without substantial change in its condition and was used by Plaintiff in a reasonably foreseeable and intended manner.

47.     The Zimmer NexGen LPS Flex was "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiff, because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer.  At no time did Plaintiff have reason to believe that the Zimmer NexGen LPS Flex was in a condition not suitable for their proper and intended use among patients.

48.     The Zimmer NexGen LPS Flex was used in the manner for which it was intended, that is, for artificial knee replacement.  This use resulted in injury to Plaintiff.

49.     Plaintiff was not able to discover, nor could he have discovered through the exercise of reasonable care, the defective nature of the Zimmer NexGen LPS Flex.  Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured the Zimmer NexGen LPS Flex in such a way as to increase the risk of harm or injury to the recipients of it.

50.     The Zimmer NexGen LPS Flex is defective in design because of its propensity to loosen and cause patients unnecessary pain and repeat surgical procedures.

51.     The Zimmer NexGen LPS Flex is unreasonably dangerous because it was sold to Plaintiff without adequate warnings regarding, inter alia, the propensity of the Zimmer NexGen LPS Flex to loosen and cause serious pain and necessitate additional surgery; the post-marketing experience of higher rates of loosening and revision surgery with the Zimmer NexGen LPS Flex; and the probability of suffering loosening and revision surgery.

52.     Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold the Zimmer NexGen LPS Flex to Plaintiff.

53.     Defendants had knowledge and information confirming the defective and dangerous nature of the Zimmer NexGen LPS Flex. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff and his physicians that the Zimmer NexGen LPS Flex causes serious injuries including, loosening and revision surgery.

54.     As a direct and proximate result of Defendants' wrongful conduct, including the Zimmer NexGen LPS Flex's defective and dangerous design and inadequate warnings, Plaintiff has sustained and will continue to sustain severe and debilitating injuries, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II

## PRODUCTS LIABILITY - FAILURE TO WARN

55.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

56.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Zimmer NexGen LPS Flex and, in the course of same, directly advertised or marketed the product to health care professionals, consumers, and/or persons responsible for

consumers, and therefore had a duty to warn of the risks associated with the use of the Zimmer NexGen LPS Flex.

57.     Defendants failed to adequately warn health care professionals and the public, including Plaintiff Steven Banberger and his prescribing physician, of the true risks of the Zimmer NexGen LPS Flex, including that the Zimmer NexGen LPS Flex could loosen, causing severe pain and injury, and requiring further treatment, including revision surgery and/or knee replacement.

58.     Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Zimmer NexGen LPS Flex.  Had they done so, proper warnings would have been heeded and no health care professional, including plaintiff's physician, would have prescribed the Zimmer NexGen LPS Flex, or no consumer, including Plaintiff, would have purchased and/or used the Zimmer NexGen LPS Flex.

59.     The Zimmer NexGen LPS Flex, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendants, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendants knew or should have known that there was reasonable evidence of an association between the Zimmer NexGen LPS Flex and knee replacement loosening causing serious injury and pain.  Defendants failed to provide adequate warnings to health care professionals and the consuming public, including Plaintiff, and continued to aggressively promote the Zimmer NexGen LPS Flex.

60.     Defendants failed to perform or otherwise facilitate adequate testing; failed to reveal and/or concealed testing and research data; and selectively and misleadingly revealed and/or analyzed testing and research data.

61.     As a direct and proximate result of the conduct of Defendants as aforesaid, Plaintiff suffered serious and permanent non-economic and economic injuries.

## COUNT III

## PRODUCTS LIABILITY – DEFECTIVE DESIGN

62.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

63.     Defendants are the researchers, developers, manufacturers, distributors, marketers, promoters, suppliers and sellers of the Zimmer NexGen LPS Flex, which is defective and unreasonably dangerous to consumers.

64.     The Zimmer NexGen LPS Flex is defective in its design in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design.  The Zimmer NexGen LPS Flex is defective in design in that it lacks efficacy and/or it poses a greater likelihood of injury than other knee replacement devices and similar knee replacement devices on the market and is more dangerous than ordinary consumers can reasonably foresee.

65.     The defective condition of the Zimmer NexGen LPS Flex rendered it unreasonably dangerous and/or not reasonably safe, and the Zimmer NexGen LPS Flex was in this defective condition at the time it left the hands of the Defendants. The Zimmer NexGen LPS Flex was expected to and did reach consumers, including Plaintiff Steven Banberger, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

66.     Plaintiff and his physician were unaware of the significant hazards and defects in the Zimmer NexGen LPS Flex.

67. The Zimmer NexGen LPS Flex was unreasonably dangerous and/or not reasonably safe in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff used the Zimmer NexGen LPS Flex, it was being utilized in a manner that was intended by Defendants.

68. At the time Plaintiff received and used the Zimmer NexGen LPS Flex, it was represented to be safe and free from latent defects.

69. Defendants are strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendants because of the design defects.

70. Defendants knew or should have known of the danger associated with the use of the Zimmer NexGen LPS Flex, as well as the defective nature of the Zimmer NexGen LPS Flex, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the Zimmer NexGen LPS Flex so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the Zimmer NexGen LPS Flex.

71. As direct and proximate cause of the design defect and Defendants' misconduct as set forth herein, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries.

## COUNT IV

## NEGLIGENCE

72. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

73.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, testing, manufacture, marketing, sale, and distribution of the Zimmer NexGen LPS Flex, including a duty to ensure that the Zimmer NexGen LPS Flex did not pose a significantly increased risk of bodily injury to its users.

74.     Defendants had a duty to exercise reasonable care in the advertising and sale of Zimmer NexGen LPS Flex, including a duty to warn Plaintiff and other consumers, of the dangers associated with the use of the Zimmer NexGen LPS Flex that were known or should have been known to Defendants at the time of the sale of the Zimmer NexGen LPS Flex to the Plaintiff.

75.     Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of the Zimmer NexGen LPS Flex because Defendants knew or should have known that the Zimmer NexGen LPS Flex had a propensity to cause serious injury, including loosening and revision surgery.

76.     Defendants failed to exercise ordinary care in the labeling of the Zimmer NexGen LPS Flex and failed to issue adequate pre-marketing or post-marketing warnings to prescribing doctors and the general public regarding the risk of serious injury, including, loosening and revision surgery.

77.     Defendants knew or should have known that Plaintiff could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

78.     Defendants breached their duty of reasonable care to Plaintiff by failing to exercise due care under the circumstances.

79.     As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, testing, manufacture, sale, and distribution of

the Zimmer NexGen LPS Flex, Plaintiff was implanted with the Zimmer NexGen LPS Flex and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

<u>**COUNT V**</u>

<u>**BREACH OF EXPRESS WARRANTY**</u>

80.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

81.     Defendants advertised, labeled, marketed and promoted its product, the Zimmer NexGen LPS Flex, representing the quality to health care professionals, the FDA, Plaintiff Steven Banberger, and the public in such a way as to induce its purchase or use, thereby making an express warranty that the Zimmer NexGen LPS Flex would conform to the representations. More specifically, Defendants represented that the Zimmer NexGen LPS Flex was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe and effective to treat Plaintiff's condition.

82.     The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

83.     The Zimmer NexGen LPS Flex did not conform to the representations made by Defendants in that the Zimmer NexGen LPS Flex was not safe and effective, was not safe and

effective for use by individuals such as Plaintiff, and/or was not safe and effective to treat in individuals, such as Plaintiff.

84.     At all relevant times, Plaintiff used the Zimmer NexGen LPS Flex for the purpose and in the manner intended by Defendants.

85.     Plaintiff and plaintiff's physician, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

86.     The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

87.     As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, testing, manufacture, sale, and distribution of the Zimmer NexGen LPS Flex, Plaintiff was implanted with the Zimmer NexGen LPS Flex and suffered severe and debilitating injuries, economic loss,  and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VI

## BREACH OF IMPLIED WARRANTY

88.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

89.     The Zimmer NexGen LPS Flex was not reasonably fit for the ordinary purposes for which such goods are used and did not meet the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manner, nor was the Zimmer NexGen LPS Flex minimally safe for its expected purpose.

90. At all relevant times, Plaintiff used the Zimmer NexGen LPS Flex for the purpose and in the manner intended by Defendants.

91. Plaintiff and plaintiff's physician, by the use of reasonable care would not have discovered the breached warranty and realized its danger.

92. The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

93. As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, testing, manufacture, sale, and distribution of the Zimmer NexGen LPS Flex, Plaintiff was implanted with the Zimmer NexGen LPS Flex and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, and pain and suffering, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VII

## FRAUDULENT MISREPRESENTATION

94. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

95. Defendant falsely and fraudulently represented to the medical and orthopaedic community and to the Plaintiff and the public in general, that the Zimmer NexGen LPS Flex had been tested and found to be safe and effective for the use in total knee arthroplasty.

96. Defendant knew, or should have known, that its representations were false yet it willfully, wantonly and recklessly disregarded its obligation to provide truthful representations

regarding the safety and risks of the Zimmer NexGen LPS Flex to consumers, including Plaintiff, and the medical and orthopaedic communities.

97.     Defendants' representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, generally, and the medical and orthopaedic communities, particularly, with the intent of encouraging and inducing sales of the Zimmer NexGen LPS Flex.

98.     Defendant knowingly, consciously, and deliberately placed their financial gain above the rights and safety of Plaintiff and other consumers.

99.     Defendants' fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

100.    Plaintiff was unaware of the falsity of Defendants' representations and reasonably relied upon Defendants' representations, thereby developing prosthetic loosening and enhanced risk of developing additional severe and permanent injuries in the future.

101.    As a direct and proximate result of Defendants' fraudulent misrepresentation, Plaintiff developed prosthetic loosening and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions, including, but not limited to, subsequent revision surgeries.

102.    In addition, Defendants' conduct in the marketing, advertising, promotion, distribution, and sale of the Zimmer NexGen LPS Flex was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

103.    As a direct and proximate result of the fraudulent misrepresentation and as a result of the defendants' actions and/or inactions as set forth in this complaint, Plaintiff is caused

to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium and to incur related expenses, including, but not limited to, additional surgeries, prescription medicines, medical, hospital and nursing costs as well as loss of earning, diminution in earning capacity and/or other costs as proof will show, and the Plaintiff's demands to which the Plaintiff is entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

## COUNT VIII

## FRAUDULENT CONCEALMENT

104. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

105. At all relevant times, Defendant concealed or omitted material information regarding the safety of the Zimmer NexGen LPS Flex from consumers, including Plaintiff, and the medical and orthopaedic communities.

106. Defendants knew, or were reckless in not knowing, that the Zimmer NexGen LPS Flex posed significant risks of causing severe and permanent injuries, and elected not to advise the medical and orthopaedic communities, Plaintiff, or other consumers of the Zimmer NexGen LPS Flex's risks, and consequently placed its profits above the safety of Plaintiff and other consumers.

107. In its representations, Defendant fraudulently concealed and intentionally omitted material information about the Zimmer NexGen LPS Flex's dangers from consumers, including Plaintiff.

108. Defendants knew, or were reckless in not knowing, that the Zimmer NexGen LPS Flex causes dangerous prosthetic loosening and other severe and permanent injuries.

109.     Defendants had sole access to material facts concerning the dangers and unreasonable risks of the Zimmer NexGen LPS Flex.

110.     Defendants willfully concealed material information regarding the dangers of the Zimmer NexGen LPS Flex to induce consumers, including Plaintiff, to use the Zimmer NexGen LPS Flex. Defendants' concealment of the defective nature of the Zimmer NexGen LPS Flex and its dangerous risks caused Plaintiff to suffer damages.

111.     Defendants were under a duty to disclose to Plaintiff, other consumers, and the medical and orthopaedic communities the defective nature of the Zimmer NexGen LPS Flex, and the risks and dangers associate with its use.

112.     As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff developed prosthetic loosening and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including additional surgeries.

113.     In addition, Defendants' conduct in the marketing, advertising, promotion, distribution, and sale of the Zimmer NexGen LPS Flex was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

114.     As a direct and proximate result of the fraudulent concealment of the Defendants' actions and/or inactions as set forth in this complaint, Plaintiff was caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution

in earning capacity and/or other costs as proof will show, and the Plaintiff demands all damages to which the Plaintiff is entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

## COUNT IX

## NEGLIGENT MISREPRESENTATION

115.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

116.    Defendants, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiff, other patients, and the medical and orthopaedic communities.

117.    Defendants, through its misrepresentations, intended to induce justifiable reliance by Plaintiff, other patients, and the medical and orthopaedic communities.

118.    Defendant through its marketing campaign and communications with treating physicians or orthopedists was in a relationship so close to that of Plaintiff and other patients that it approaches and resembles privity.

119.    Defendant owes a duty to the medical and orthopaedic communities, Plaintiff, and other consumers, to conduct appropriate and adequate studies and tests for all its products, including the Zimmer NexGen LPS Flex, and to provide appropriate and adequate information and warnings.

120.    Defendants failed to conduct appropriate or adequate studies for the Zimmer NexGen LPS Flex.

121.    Defendants failed to exercise reasonable care by failing to conduct studies and tests of the Zimmer NexGen LPS Flex.

122.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff developed aseptic loosening, thus requiring revision surgery and was caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, additional surgeries.

123.    As a direct and proximate result of Defendants' negligent misrepresentations and as a result of the Defendants' actions and/or inactions as set forth in this complaint, Plaintiff was caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the Plaintiff demands all damages to which the Plaintiff is entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

## COUNT X

## LOSS OF CONSORTIUM

124.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

125.    Plaintiff's spouse, Phyllis Banberger, was at all times relevant herein married to Plaintiff.

126.    By reason of the foregoing, plaintiff's spouse has necessarily paid and has become liable to pay for medical aid, treatment, attendance, and for medications, and will necessarily incur further expenses of a similar nature in the future.

127. By reason of the foregoing, plaintiff's spouse has been caused, presently and in the future, the loss of plaintiff's husband's companionship, services, society and the ability of said plaintiff's spouse in said respects has been impaired, and depreciated, and the marital association between husband and wife has been altered, and as such the plaintiff's spouse has been caused great mental anguish and suffering.

128. Plaintiff demands judgment against each defendant individually and/or jointly for compensatory damages and punitive damages together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

## COUNT XI

## PUNITIVE DAMAGES

129. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

130. Defendants' conduct in manufacturing, marketing, selling, distributing, testing and submitting for FDA approval was outrageous, that is, done with bad motives and/or with a reckless indifference to the interest of others, including Plaintiff, the consuming public, health care professionals and the FDA.

131. As a direct and proximate result of the defendants' outrageous conduct, Plaintiff was caused to suffer damages, including but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium, and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the Plaintiff demands all damages to which Plaintiff is entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

1.     Compensatory damages in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all his injuries and damages, both past and present;

2.     Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of his injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering.

3.     Double or triple damages as allowed by law;

4.     Attorneys' fees, expenses, and costs of this action;

5.     Pre-judgment judgment and post-judgment Interest in the maximum amount allowed by law and

6.     Such further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

Dated:   July 22, 2011

Respectfully submitted,

WEITZ & LUXENBERG, P.C.

_____ /s/ David L. Rosenband_____

David Rosenband, Esq., NY# 317093
Ellen Relkin, Esq. NY# 256663
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, NY  10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: drosenband@weitzlux.com
Email: erelkin@weitzlux.com